SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Kathleen DiFiore v. Tomo Pezic (A-58/59/60-21) (087091)**

**Argued January 3, 2023 -- Decided June 15, 2023**

**WAINER APTER, J., writing for a unanimous Court.**

In this appeal, the Court clarifies procedures regarding who may attend a defense medical examination (DME) -- as well as whether and how such examinations may be recorded -- when a plaintiff has alleged cognitive limitations, psychological impairments, or language barriers.

In each of these three personal injury actions, the defendants required the plaintiffs to submit to a DME. Plaintiffs, who had alleged cognitive limitations, psychological impairments, or language barriers, sought to record the examinations or to be accompanied by a third-party observer (TPO) at the examination. After various trial court rulings, the Appellate Division consolidated the cases for purposes of its opinion. 472 N.J. Super. 100, 104 n.1 (App. Div. 2022).

The Appellate Division remanded all three cases for reconsideration in light of its six-part holding that (1) "a disagreement over whether to permit third-party observation or recording of a DME shall be evaluated by trial judges on a case-by-case basis, with no absolute prohibitions or entitlements"; (2) "it shall be the plaintiff's burden henceforth to justify to the court that third-party presence or recording, or both, is appropriate in a particular case" "despite contrary language" in B.D. v. Carley, 307 N.J. Super. 259 (App. Div. 1998); (3) the range of options available "should include video recording, using a fixed camera that captures the actions and words of both the examiner and the plaintiff"; (4) when defense examiners are concerned that TPOs or recordings "might reveal alleged proprietary information about the content and sequence of the exam, the parties shall cooperate to enter into a protective order, so that such information is solely used for the purposes of the case and not otherwise divulged"; (5) a court that permits a TPO to attend a DME "shall impose reasonable conditions to prevent the observer from interacting with the plaintiff or otherwise interfering with the exam"; and (6) "if a foreign or sign language interpreter is needed for the exam . . . the examiner shall utilize a neutral interpreter agreed upon by the parties or, if such agreement is not attained, an interpreter selected by the court." Id. at 106-07. The Court granted leave to appeal. 251 N.J. 374 (2022); 251 N.J. 376 (2022).

1

**HELD:**    *The Court affirms the Appellate Division's core holding that trial courts determine on a case-by-case basis what conditions, if any, to place on a DME -- including who may attend and whether it may be recorded -- with no absolute prohibitions or entitlements.  The Court further affirms that video recording, in addition to audio recording, should be included in the range of options; that the parties shall enter into a protective order when a defense expert is concerned about the disclosure of proprietary information; that when third-party observation is permitted, the trial court shall impose reasonable conditions to prevent any disruption of or interference with the exam; and that, if a foreign or sign language interpreter is needed, a neutral interpreter shall be selected by the parties or, failing agreement, by the court.

*The Court departs from the Appellate Division only in declining to place the burden on the plaintiff to show special reasons why third-party observation or recording should be permitted in each case.  Instead, once the defendant issues notice to the plaintiff of a Rule 4:19 exam, the plaintiff should inform the defendant if they seek to bring a neutral observer or unobtrusively record the examination.  If the defendant objects, the two sides should meet and confer to attempt to reach agreement.  If agreement is impossible, the defendant may move for a protective order under Rule 4:10-3 seeking to prevent the exam from being recorded, or to prevent a neutral third-party observer from attending.  Factors including a plaintiff's cognitive limitations, psychological impairments, language barriers, age, and inexperience with the legal system may weigh in favor of allowing unobtrusive recording and the presence of a neutral third-party observer.

*The Court is confident in the ability of trial courts to decide what to permit and what to forbid so that examinations can proceed with fairness to both parties.  The Court anticipates that in most cases, disputes regarding third-party observation and recording can and will be resolved without involving the court.

1.  The Court reviews the text of the Court Rules relevant to this case -- Rule 4:19, entitled "Physical and Mental Examination of Persons," and Rule 4:10-3, which allows a plaintiff who objects to a noticed DME to move for a protective order.  Rule 4:19 now provides that defendants may require plaintiffs "whose physical or mental condition is in controversy to submit to a physical or mental examination by a medical or other expert by serving upon that party a notice stating with specificity when, where, and by whom the examination will be conducted and advising, to the extent practicable, as to the nature of the examination and any proposed tests." (emphasis added).  Before it was amended in 2000, however, the Rule allowed a court, "on motion for good cause shown" and an "affidavit stating the party's refusal," to order a refusing party to "submit to a physical or mental examination by a medical or other expert."  R. 4:19 (1994).  The court order was required to specify the "time, place, manner, conditions, and scope of the examination."  (pp. 18-20)

2

2.  The Court has never before considered the recording or third-party observation of a DME under Rule 4:19 or Rule 4:10-3.  Carley is the only such published Appellate Division decision, and it predates the 2000 amendment to Rule 4:19.  Carley stands for the proposition that a plaintiff need not show special reasons to justify recording a psychological examination or bringing counsel or a representative to a physical examination.  In Wellmann ex rel Wellmann v. Road Runner Sports, Inc., the Law Division applied the amended Rule 4:19 to the question of third-party observation and recording and noted that it was unclear "whether the plaintiff has the burden of showing special circumstances to warrant the attorney's presence at or the recording of a physical exam, or whether the defendant has the burden of showing special reasons to exclude the plaintiff's attorney or other representative from a physical examination."  458 N.J. Super. 373, 377-80 (Law Div. 2018).  The court found that the minor plaintiff in that case was entitled to record and have counsel and/or her parents present regardless of who bore the burden, and it emphasized the many ways in which a DME differs from an examination with a plaintiff's treating physician.  Id. at 380-81.  (pp. 20-23)

3.  Noting that a video or audio recording, or a TPO, may in some circumstances be vital to preserving evidence of a DME, the Court agrees with prongs (1) and (3) through (6) of the Appellate Division's six-prong holding.  (pp. 23-25)

4.  The Court departs from the Appellate Division's holding on prong (2), concluding instead that placing the burden on defendants to show why a neutral TPO or an unobtrusive recording should not be permitted in a particular case best comports with the realities of DMEs and the text of Rules 4:19 and 4:10-3.  It also ensures fairness in our civil justice system.  A DME is very different from a plaintiff's examination by her own treating physician or any doctor of her choosing and has unique status within our adversarial legal system as the only instance in which a defense expert may conduct discovery on a plaintiff without plaintiff's counsel present.  The Court notes that a DME itself is inherently adversarial.  The Court disagrees with the Appellate Division's view that altering the burden of proof was justified by the 2000 amendments to Rule 4:19.  Whereas the pre-2000 Rule 4:19 stated that the court's order "shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made," the amended Rule 4:19 permits a defendant to dictate only "when, where, and by whom" the examination will be conducted.  (emphases added).  The change to Rule 4:19 thus does not support placing a burden on the plaintiff to justify third-party observation or recording of a DME.  (pp. 25-28)

5.  Further, Rule 4:19 does not require plaintiffs to move for a protective order if they oppose the conditions that a defendant has imposed on a DME.  Instead, it provides that plaintiffs must move for a protective order if they refuse to submit to the Rule 4:19 examination.  Rule 4:10-3 also does not require a plaintiff to move for

3

a protective order to bring a neutral TPO or a recording device to a DME. Subsection (a) of that Rule can be read to refer to a motion by a plaintiff who refuses to submit to a DME, whereas subsection (e) can be read to reference a motion by a defendant to preclude third-party observation at a DME. None of the provisions of Rule 4:10-3 seem to apply to a plaintiff who seeks to bring a TPO to a DME. And the analyses adopted by other states and by the Federal Rules of Civil Procedure likewise do not support placing the burden on the plaintiff to show special circumstances to justify a neutral TPO or recording in each particular case. (pp. 28-32)

6. The Court holds that if a plaintiff seeks to bring a neutral TPO to a Rule 4:19 exam, or to audio or video record the exam, plaintiff's counsel should notify defendant. If defense counsel opposes the third-party observation or recording, the parties should meet and confer in an effort to reach agreement. Failing an agreement, defendant can move for a protective order under Rule 4:10-3 to bar the observation or recording. The Court provides guidance to trial courts regarding the case-by-case analysis that must then be undertaken to decide what to permit or forbid. The Court's holding applies only to neutral TPOs, not attorneys, and it is limited to third-party observers, not third parties who seek to interfere with or disrupt the exam. The Court refers to the Civil Practice Committee whether Rules 4:19 or 4:10-3 should be amended to reflect the holding in this case. (pp. 32-34)

7. The Court explains why it finds unwarranted the concern that, in light of the 2016 Policy Statement of the American Board of Professional Neuropsychology and the position taken by the State Board of Psychological Examiners in this litigation, neuropsychologists will refuse to perform evaluations if ordered by a court to permit a neutral TPO or recording. (pp. 34-37)

8. The question presented in this case involves only defense medical examinations, which are conducted solely for purposes of litigation, not treatment. The Court refers to the Civil Practice Committee whether there should be any provision to allow defendants to record or observe examinations by non-treating doctors arranged by plaintiffs' counsel solely for the purposes of litigation. (pp. 37-38)

**AFFIRMED AS MODIFIED. REMANDED to the trial courts.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUSTICE WAINER APTER's opinion. JUSTICE FASCIALE and JUDGE SABATINO (temporarily assigned) did not participate.**

4

Kathleen DiFiore,

Plaintiff-Appellant,

v.

Tomo Pezic, Pezo, Inc.,
Great American Assurance Co.,
Chubb, and Arthur J. Gallagher & Co.,
& Bollinger, Inc.,

Defendants,

and

Driss Elhamdouchi,
Route 94 Limousine, Inc.,
and 201 Taxicab, LLC,

Defendants-Respondents.

Dora Deleon,

Plaintiff-Appellant,

v.

The Achilles Foot and Ankle Group,

Defendant,

and

1

Franklin N. Levinson, and
Eileen F. Levinson,

Defendants-Respondents.

<hr>

Jorge Remache-Robalino,

Plaintiff-Appellant,

v.

Nader Boulos, M.D.,
Lani Mendelson, M.D., and
St. Joseph's Regional Medical Center,

Defendants-Respondents.

On appeal from the Superior Court,
Appellate Division, whose opinion is reported at
472 N.J. Super. 100 (App. Div. 2022).

| Argued | Decided |
| --- | --- |
| January 3, 2023 | June 15, 2023 |

Nicholas T. Delaney argued the cause for appellant
Kathleen DiFiore (Houghton Delaney, attorneys;
Nicholas T. Delaney and Katherine G. Houghton, on the
briefs).

Sherry L. Foley argued the cause for appellant Dora
Deleon (Foley & Foley and Greenberg & Walden,
attorneys; Sherry L. Foley, Timothy J. Foley, and Marvin
R. Walden, Jr., of counsel and on the brief).

Christina Vassiliou Harvey argued the cause for appellant
Jorge Remache-Robalino (Lomurro, Munson, Comer,
Brown & Schottland, attorneys; Jonathan H. Lomurro, of
counsel, Christina Vassiliou Harvey, of counsel and on

the briefs, and Jeffrey J. Niesz and Andrew B. Broome, on the briefs).

Cynthia A. Satter argued the cause for respondents Driss Elhamdouchi, Route 94 Limousine, Inc., and 201 Taxicab, LLC (Blick Law, attorneys; Cynthia A. Satter and Shaun I. Blick, on the brief).

Monique D. Moreira argued the cause for respondents Franklin N. Levinson and Eileen F. Levinson (Moreira Sayles Ramirez, attorneys; Monique D. Moreira, on the brief).

Charles E. Murray, III, argued the cause for respondents Nader Boulos, M.D., Lani Mendelson, M.D., and St. Joseph's Regional Medical Center (Farkas & Donohue, attorneys; Charles E. Murray, III, of counsel and on the briefs).

Catherine B. Derenze argued the cause for amici curiae Medi-Law Solutions, LLC and the National Association of Certified Legal Nurse Consultants (Lite DePalma Greenberg & Afanador, attorneys; Catherine B. Derenze and Bruce D. Greenberg, on the brief).

Andrew M. Moskowitz argued the cause for amicus curiae National Employment Lawyers Association of New Jersey (Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, attorneys; Andrew M. Moskowitz, on the brief).

James S. Lynch argued the cause for amicus curiae New Jersey Association for Justice (Lynch, Lynch, Held & Rosenberg, attorneys; James S. Lynch and Joseph M. Cerra, on the brief).

Nancy Costello Miller, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney;

3

Donna Arons, Assistant Attorney General, of counsel, and Nancy Costello Miller, on the brief).

Michelle M. O'Brien argued the cause for amicus curiae New Jersey Defense Association (Flanagan, Barone & O'Brien, attorneys; Michelle M. O'Brien, of counsel and on the brief).

JUSTICE WAINER APTER delivered the opinion of the Court.

We are asked here to clarify procedures regarding who may attend a defense medical examination -- as well as whether and how such examinations may be recorded -- when a plaintiff has alleged cognitive limitations, psychological impairments, or language barriers.

In personal injury actions and other cases in which the mental or physical condition of the plaintiff is in controversy, Rule 4:19 allows defendants to require plaintiffs to be physically or mentally examined by the defendants' chosen expert. After examining the plaintiff, the selected doctor generally prepares a report opining on the plaintiff's condition, which is used in evaluating the existence and extent of plaintiff's injury, illness, or capacity. Often, the doctor who conducted the defense medical examination (DME) will testify at trial for the defense.

Before us are three personal injury actions. In each, the defendants required the plaintiffs to submit to a DME; two of the DMEs were

4

neuropsychological exams, and one was an orthopedic exam.  Plaintiffs, who had alleged cognitive limitations, psychological impairments, or language barriers, sought to record the examinations or to be accompanied by a third-party observer (TPO) at the examination.  After various trial court rulings, the Appellate Division consolidated the cases for purposes of its opinion.  DiFiore v. Pezic, 472 N.J. Super. 100, 104 n.1 (App. Div. 2022).

We granted leave to appeal and now affirm the Appellate Division's decision as modified.  We affirm the Appellate Division's core holding that trial courts determine on a case-by-case basis what conditions, if any, to place on a DME -- including who may attend and whether it may be recorded -- with no absolute prohibitions or entitlements.  We further affirm that video recording, in addition to audio recording, should be included in the range of options; that the parties shall enter into a protective order when a defense expert is concerned about the disclosure of proprietary information; that when third-party observation is permitted, the trial court shall impose reasonable conditions to prevent any disruption of or interference with the exam; and that, if a foreign or sign language interpreter is needed, a neutral interpreter shall be selected by the parties or, failing agreement, by the court.

We depart from the Appellate Division only in that we decline to place the burden on the plaintiff to show special reasons why third-party observation

5

or recording should be permitted in each case. Instead, once the defendant issues notice to the plaintiff of a <u>Rule</u> 4:19 exam, the plaintiff should inform the defendant if they seek to bring a neutral observer or unobtrusively record the examination. If the defendant objects, the two sides should meet and confer to attempt to reach agreement. If agreement is impossible, the defendant may move for a protective order under <u>Rule</u> 4:10-3 seeking to prevent the exam from being recorded, or to prevent a neutral third-party observer from attending. Factors including a plaintiff's cognitive limitations, psychological impairments, language barriers, age, and inexperience with the legal system may weigh in favor of allowing unobtrusive recording and the presence of a neutral third-party observer. Although defense neuropsychologists cannot dictate the terms under which DMEs are held, they can raise concerns that may weigh against recording or third-party observation in particular instances.

Guided by the principles we discuss below, we are confident in the ability of trial courts to decide what to permit and what to forbid so that examinations can proceed with fairness to both parties. We also anticipate that in most cases, disputes regarding third-party observation and recording can and will be resolved without involving the court.

6

I.

The underlying facts and procedural history are carefully described in the Appellate Division's thorough opinion. We include only a summary here.

A.

Plaintiff Kathleen DiFiore was in her early seventies in 2018 when she suffered serious injuries in an accident while riding in a taxicab. She was hospitalized for three weeks and diagnosed with a traumatic brain injury, amnesia, expressive aphasia, memory loss, seizure, neck fractures, twelve rib fractures, a fractured sternum, and bilateral collapsed lungs. In an assessment completed two years later, DiFiore's expert opined that her traumatic brain injury was so severe that she "requires a home health aide 24 hours per day for her lifetime."

DiFiore attended an orthopedic DME in May 2020, accompanied by her friend and medical proxy, Susan Harper Lloyd, and her nurse consultant, Jane Barone. In October 2020, two of the defendants -- Driss Elhamdouchi, the taxi driver, and Route 94 Limousine, Inc., the taxi proprietor -- scheduled DiFiore for a neuropsychological DME with Dr. Keith Benoff.[1] Plaintiff advised that

_____

[1] According to the Cleveland Clinic, "[n]europsychology is a specialty field that joins the medical fields of neurology, psychology and psychiatry. Neuropsychology involves determining how well the brain is working when it is disrupted by a brain injury or psychological disorder," and "[a] neuropsychological assessment is a comprehensive test of a wide range of

she would again be accompanied by her medical proxy and a nurse consultant. Defendant claims that plaintiff's medical proxy stated that she would answer questions on plaintiff's behalf, but plaintiff disputes that contention, and states that the medical proxy intended to simply observe the exam. Defendant eventually filed a motion to compel the DME with only one person present -- the medical proxy or the nurse consultant -- and then sought to bar any third party from attending. Plaintiff argued that because of her injuries, she would have no memory of the DME and would be unable to assist her attorneys in preparing for trial. Dr. Benoff certified that "he would be 'prevented' from 'fairly and accurately assessing'" DiFiore if a representative was "permitted to answer[] questions" on her behalf. DiFiore, 472 N.J. Super. at 114-15. However, as the Appellate Division noted, "Dr. Benoff did not state that the presence of a third party in the examination room would prevent him from being able to properly assess a patient," and he "made no statement . . . about the use of recording devices of any kind." Id. at 115. The trial court eventually ordered DiFiore to attend the exam unaccompanied, with the exception that the nurse consultant could enter the exam room to turn on an audio recording device and then leave.

mental functions including behavior." See https://my.clevelandclinic.org/ health/diagnostics/4893-neuropsychological-testing-and-assessment (last visited June 8, 2023).

8

In December 2017, Jorge Remache-Robalino, a native Spanish speaker in his mid-fifties, was injured in a work-related accident that damaged his right eye, ultimately leading to blindness in that eye.  A psychiatrist later diagnosed him with major depressive disorder and post-traumatic stress disorder, and noted that his concentration and short-term memory were "mildly impaired." After defendants -- two doctors who treated plaintiff's injuries and their employer, St. Joseph's Regional Medical Center -- noticed a neuropsychological DME, Remache-Robalino sent a letter informing defendants that, consistent with B.D. v. Carley, 307 N.J. Super. 259 (App. Div. 1998), he would audio record the DME.  He asserted that his concentration and memory issues, along with his lack of fluency in English, would leave him unable to address any inconsistencies between the exam and the defense expert's report and testimony.  Remache-Robalino specifically noted that "his bilingual attorney had spotted mistakes by the interpreter at [his] deposition," DiFiore, 472 N.J. Super. at 116, and evidence of an inaccurate translation during the DME would be lost without a recording or a third party present.

Defendants opposed an audio recording, certifying that their chosen neuropsychologist, Dr. Joel Morgan, would not perform the examination if it were recorded.  In support of his position, Dr. Morgan cited the 2016 Policy

Statement of the American Board of Professional Neuropsychology Regarding Third Party Observation and the Recording of Psychological Test Administration in Neuropsychological Evaluations (ABN Policy Statement). See Alan Lewandowski et al., ABN Policy Statement, 23 Applied Neuropsych. 391 (2016).

The trial court eventually ordered Remache-Robalino to submit to an unrecorded and unaccompanied DME. "[T]he judge found that the presence of an interpreter chosen by the defendants [did] not constitute a waiver of defendants' arguments against the presence of additional third parties or recording devices." DiFiore, 472 N.J. Super. at 117.

C.

Plaintiff Dora Deleon suffered severe injuries to her cervical and lumbar spines, as well as to both knees, after falling in front of a commercial property in May 2019. Deleon, who is in her early seventies and speaks only Spanish, alleged that her fall was caused by hazardous conditions on the sidewalk. Defendants -- the property owner and a commercial tenant -- noticed an orthopedic DME with Dr. Adibe. Deleon informed defendants that she would attend with a nurse practitioner from Medi-Law Solutions, LLC (Medi-Law). Defendants, not Dr. Adibe, objected to the nurse practitioner's attendance and moved to compel an unrecorded and unaccompanied DME. Deleon opposed

10

the motion. In opposition to the motion, Deleon submitted a certification from Jane Barone, the owner and president of Medi-Law and the nurse consultant who had sought to accompany DiFiore to her appointment with Dr. Benoff. Barone certified that her office had attended over 2,500 DMEs in the last ten years without complaint, including several with Dr. Adibe. She noted that the nurses sit "unobtrusively" and simply take notes during the examination. The trial court nonetheless ordered Deleon to attend the DME alone and without recording, finding that plaintiff had not proven any special circumstances warranting the presence of a nurse consultant.

D.

The Appellate Division granted plaintiffs' motions for leave to appeal to determine "when, if ever, a plaintiff with alleged cognitive limitations, psychological impairments, or language barriers can be accompanied by a third party to a [DME], or require that the examination be video or audio recorded in order to preserve objective evidence of what occurred during the examination." DiFiore, 472 N.J. Super. at 105. The Appellate Division also granted motions to participate as amici curiae to the New Jersey Association for Justice (NJAJ) and the New Jersey Defense Association (NJDA), and invited the Attorney General to participate on behalf of the State Board of Psychological Examiners (Board). Id. at 119.

11

In a published opinion, the appellate court sought to balance plaintiffs' concerns that experts "might not accurately describe what occurred at the exam" and that plaintiffs "might not be capable of effectively rebutting the examiners' versions of the sessions" without a recording or third-party observer, against defendants' concern "that the presence of a third party or a recording device within the exam room might distract the plaintiff or otherwise interfere with the DME." Id. at 105.

Although a DME is not "an adversarial proceeding," the Appellate Division stated, it is also not "always a purely objective exercise." Id. at 121. "The examiners tend to be hired repeatedly by insurance companies and defense firms" and often testify against plaintiffs at trial. Ibid. The court analyzed the text of Rule 4:19, the 2000 amendments to the Rule, and the 2016 ABN Policy Statement. Id. at 126. The appellate court also reviewed its prior published opinion in B.D. v. Carley, as well as relevant Law Division decisions. Concluding that Carley "should be updated and revised in some respects," DiFiore, 472 N.J. Super. at 129, the Appellate Division issued a six-part holding:

> First, a disagreement over whether to permit third-party observation or recording of a DME shall be evaluated by trial judges on a case-by-case basis, with no absolute prohibitions or entitlements.

12

Second, despite contrary language in Carley, it shall be the plaintiff's burden henceforth to justify to the court that third-party presence or recording, or both, is appropriate in a particular case.

Third, given advances in technology since 1998, the range of options should include video recording, using a fixed camera that captures the actions and words of both the examiner and the plaintiff.

Fourth, to the extent that examiners hired by the defense are concerned that a third-party observer or a recording might reveal alleged proprietary information about the content and sequence of the exam, the parties shall cooperate to enter into a protective order, so that such information is solely used for the purposes of the case and not otherwise divulged.

Fifth, if the court permits a third party to attend the DME, it shall impose reasonable conditions to prevent the observer from interacting with the plaintiff or otherwise interfering with the exam.

Sixth, if a foreign or sign language interpreter is needed for the exam (as is the case in two of the appeals before us) the examiner shall utilize a neutral interpreter agreed upon by the parties or, if such agreement is not attained, an interpreter selected by the court.

[Id. at 106-07.]

The court remanded all three cases for reconsideration. Id. at 107.

In separate orders, we granted plaintiffs' motions for leave to appeal. See 251 N.J. 374 (2022); 251 N.J. 376 (2022). In addition to the amici who participated before the Appellate Division and continued to participate before this Court, we also granted leave to the National Employment Lawyers

13

Association of New Jersey (NELA) and to Medi-Law Solutions, LLC and the National Association of Certified Legal Nurse Consultants (collectively, Medi-Law) to appear as amici curiae.

## II.

Plaintiffs argue that <u>Carley</u> created a "presumption" in favor of allowing a third-party observer or recording at a DME. By shifting the burden to plaintiffs to "justify third-party presence and/or recording," plaintiffs contend, the Appellate Division improperly created a "sea change departing from New Jersey case law." The Appellate Division also erred, plaintiffs maintain, when it determined "that DMEs are not 'an adversarial proceeding' per se." Plaintiffs urge this Court to read <u>Rules</u> 4:19 and 4:10-3 in tandem to hold that the party seeking to restrict access to an exam -- whether it be in the form of a third-party observer or a recording device -- should be compelled to move for a protective order and bear the burden of demonstrating why such limitations are necessary.

According to defendants, a DME is no more adversarial than a plaintiff's medical exam. Defendants contend that the Appellate Division correctly placed the burden on plaintiffs to demonstrate a need for a recording or a third-party observer, as "the party with access to the most information as to the plaintiff's health and needs should bear the burden of demonstrating such to

14

the court." The Appellate Division's decision, defendants maintain, rests on "sound legal reasoning" and "should not be disturbed," as neither Rule 4:19 nor Rule 4:10-3 contemplates a defendant bearing the burden when a plaintiff seeks to impose conditions on a DME. Defendants also assert that plaintiffs seek to "evade the effectiveness of neuro-psychological examinations" by seeking to record DMEs, knowing the best neuropsychologists refuse to perform recorded exams.

The Attorney General advises that the Board endorses the ABN Policy Statement, which it says demonstrates that the presence of third-party observers violates guidelines for neuropsychological examiners. If a psychologist is "found to have deviated from professional standards and, by having done so, violated the Board's regulations," the Attorney General asserts, the practitioner could be subject to sanctions. The Attorney General argues that separation of powers would not preclude the Board from disciplining an examiner for violating standards of practice, even if performed under a court order. However, the Attorney General acknowledges that the Judiciary has the constitutional authority to control pretrial discovery.

NJAJ urges this Court to clarify that under Carley and the 2000 amendments to Rule 4:19, plaintiffs have a presumptive right to record and to the presence of a patient advocate during a DME, and defendants can limit

15

those rights only upon a showing of "special reasons." Responding to the Board and the ABN Policy Statement, NJAJ cites the American Psychological Association's "Statement on Third Party Observers in Psychological Testing and Assessment: A Framework for Decision Making," which notes there is no ethical rule barring third-party observation at psychological exams. Additionally, NJAJ argues that it would be "arbitrary and capricious agency action for the state [Board] to sanction a mental health professional for" abiding by a court order.

NELA reasons that a DME is an adversarial proceeding and an "anomaly" in civil litigation, as the only discovery procedure through which a plaintiff can be compelled to undergo an adversarial examination outside the presence of counsel. Citing other states that permit third-party representatives, audio, and video recording of DMEs, NJAJ argues that placing the burden on defendants to prove an "undue burden" is consistent with Rule 4:10-3.

Medi-Law notes that the power imbalance between a physician and a plaintiff has long been ameliorated by the presence of a legal nurse consultant (LNC) in the examination room. Medi-Law contends that an LNC -- "a registered nurse who undergoes additional training and accreditation that allows them to assist counsel in understanding medical issues that arise in their cases" -- does not serve as a plaintiff advocate, but as a silent observer. An

16

LNC's presence during a DME, Medi-Law maintains, protects a plaintiff's right to cross-examination when a plaintiff is unable to recount what occurred during a DME.

NJDA asserts DMEs are not adversarial proceedings and contends that plaintiffs are seeking accompaniment not by an "independent observer," but by an advocate. The Appellate Division's decision leaves plaintiffs and defendants on "equal footing," NJDA explains, but plaintiffs seek to gain the "upper hand" in seeking additional safeguards under Rule 4:19. According to NJDA, the Appellate Division was therefore correct to reconsider Carley.

III.

A.

This case concerns a discovery dispute over a court rule. Generally, "[a] trial court's resolution of a discovery issue is entitled to substantial deference and will not be overturned absent an abuse of discretion." State v. Stein, 225 N.J. 582, 593 (2016). We defer to the trial court's decision so long as it is not "so wide [of] the mark that a manifest denial of justice resulted," Rowe v. Bell & Gossett Co., 239 N.J. 531, 551-52 (2019) (alteration in original) (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)), or is not "based on a mistaken understanding of the applicable law," State in Int. of A.B., 219 N.J.

17

542, 554 (2014) (quoting <u>Pomerantz Paper Corp. v. New Cmty. Corp.</u>, 207 N.J. 344, 371 (2011)).

However, we review the meaning or scope of a court rule de novo, applying "ordinary principles of statutory construction to interpret the court rules." <u>State v. Robinson</u>, 229 N.J. 44, 67 (2017). We begin with the plain language of the rule, and "ascribe to the [words of the rule] their ordinary meaning and significance . . . and read them in context with related provisions so as to give sense to the [court rules] as a whole." <u>Wiese v. Dedhia</u>, 188 N.J. 587, 592 (2006) (alterations in original) (quoting <u>DiProspero v. Penn</u>, 183 N.J. 477, 492 (2005)). Unlike statutes, which we have no license to amend, our Constitution vests us with authority to "make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts." <u>N.J. Const.</u> art. VI, § 2, ¶ 3. We exercise this authority to "<u>ensure greater fairness in the administration of justice</u>" -- to make our civil justice system more fair. <u>Orientale v. Jennings</u>, 239 N.J. 569, 592 (2019) (emphasis added).

B.

<u>Rule</u> 4:19, entitled "Physical and Mental Examination of Persons," provides in part:

> In an action in which a claim is asserted by a party for personal injuries or in which the mental or physical

18

condition of a party is in controversy, the adverse party may require the party whose physical or mental condition is in controversy to submit to a physical or mental examination by a medical or other expert by serving upon that party a notice stating with specificity <u>when, where, and by whom the examination will be conducted</u> and advising, to the extent practicable, as to the nature of the examination and any proposed tests.

[<u>R.</u> 4:19 (emphasis added).]

A plaintiff who objects to the noticed DME can move for a protective

order under <u>Rule</u> 4:10-3, which provides:

On motion by a party or by the person from whom discovery is sought, the court, for good cause shown or by stipulation of the parties, may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including, but not limited to, one or more of the following:

(a) That the discovery not be had;

(b) That the discovery may be had only on specified terms and conditions, including a designation of the time or place;

(c) That the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

(d) That certain matters not be inquired into, or that the scope of the discovery be limited to certain matters;

(e) That discovery be conducted with no one present except persons designated by the court . . . .

19

[R. 4:10-3; see also Il Grande v. DiBenedetto, 366 N.J. Super. 597 (App. Div. 2004) (detailing the process that applies if a plaintiff who refuses to undergo a Rule 4:19 DME moves for a protective order under Rule 4:10-3).]

Rule 4:19 was substantially amended in 2000. Before the amendment, the Rule allowed a court, "on motion for good cause shown" and an "affidavit stating the party's refusal," to order a refusing party to "submit to a physical or mental examination by a medical or other expert." R. 4:19 (1994). The court order was required to specify the "time, place, manner, conditions, and scope of the examination." Ibid. (emphasis added).

## C.

No decision of this Court has ever considered the recording or third-party observation of a DME under Rule 4:19 or Rule 4:10-3. Carley is the only such published Appellate Division decision, and it predates the 2000 amendment to Rule 4:19. In Carley, the defendant scheduled a psychological DME. 307 N.J. Super. at 260. Plaintiff's counsel indicated that his client intended to audio record the exam. Ibid. The trial judge granted defendant's motion to preclude a recording, relying in part upon the "examining psychologist's statement that she believed audiotaping would influence the examination and might affect the examination's validity." Ibid.

20

The Appellate Division reversed. It noted that "in a psychological or psychiatric examination," the presence of the plaintiff's attorney "could be distracting," but held there was no similar issue with audio recording:

> We determine here that the defense psychologist does not have the right to dictate the terms under which the examination shall be held. This is a discovery psychological examination, not one in which plaintiff is being treated. Plaintiff's right to preserve evidence of the nature of the examination, the accuracy of the examiner's notes or recollections, the tones of voice and the like outweigh the examiner's preference that there be no recording device.
>
> [Id. at 262 (emphasis added).]

Carley explicitly overruled Stoughton v. B.P.O.E. No. 2151, 281 N.J. Super. 605 (Law Div. 1995), insofar as it had "generally limit[ed] without special reasons, the presence of counsel or a representative at physical examinations (other than psychological or psychiatric examinations) and also limit[ed] the use of recording devices at psychiatric or psychological examinations." Carley, 307 N.J. Super. at 262 (emphasis added). Carley thus stands for the proposition that a plaintiff need not show special reasons to justify recording a psychological examination or bringing counsel or a representative to a physical examination.

The Law Division applied the amended Rule 4:19 to the question of third-party observation and recording in one published decision, Wellmann ex

21

rel. Wellmann v. Rd. Runner Sports, Inc., 458 N.J. Super. 373 (Law Div. 2018). In Wellmann, the defendant filed a motion to compel seven-year-old Ryan to attend two medical examinations "without condition, without attendance of a third party (including one of her parents), and without the ability to record the examination." Id. at 375-76. Plaintiffs "cross-move[d] for a protective order that permits recording by either audio or video, or both, of any defense medical examinations, and permits third-party representatives to be present during the examinations." Id. at 376. The court denied defendants' motion and granted plaintiffs' cross-motion. Ibid.

As an initial matter, the Wellmann court noted that although Carley suggested that "defendant has the burden of showing special reasons to exclude the plaintiff's attorney or other representative from a physical examination," an earlier opinion of the Law Division had stated that the pre-amendment Rule 4:19 "place[d] the burden on plaintiffs to justify why in their particular case their attorney should be present and/or a recording device should be used." Id. at 377-78 (citing Carley, 307 N.J. Super. at 262; Briglia v. Exxon Co., USA, 310 N.J. Super. 498, 502 (Law Div. 1997)). It was therefore unclear "whether the plaintiff has the burden of showing special circumstances to warrant the attorney's presence at or the recording of a physical exam, or whether the defendant has the burden of showing special

22

reasons to exclude the plaintiff's attorney or other representative from a physical examination." Id. at 380. Regardless of who bore the burden, the court held, Ryan should be permitted to audio and/or video record the exam, and to have her counsel and/or her parents present. Id. at 380-81. In so holding, the court emphasized the many ways in which a DME differs from an examination with a plaintiff's treating physician. Ibid.

IV.

With that background in mind, we address the question presented in this case: whether the presence of third-party observers and the recording of DMEs are permitted when a plaintiff has alleged cognitive limitations, psychological impairments, or language barriers.

A.

We agree with much of the Appellate Division's comprehensive opinion. A video or audio recording, or a third-party observer, the Appellate Division rightly held, may in some circumstances be vital to preserving evidence of a DME. DiFiore, 472 N.J. Super. at 122-23. Often, a defense expert's written report is the only evidence of the exam. And the report may, of course, "include observations and findings . . . that are inaccurate." Id. at 122. While in certain "routine scenarios" plaintiffs may be able to "refute the examiner's account of what occurred at the DME" at trial, that may not be true for

23

plaintiffs with cognitive limitations, psychological impairments, or language barriers.  Ibid.  Even for people without such limitations, impairments, or barriers, the Appellate Division correctly recognized that "the stress and anxiety of the exam itself with an unfamiliar doctor or other professional may" diminish a person's ability to "absorb and recall what occurred at [a] DME." Id. at 123.

We therefore affirm five prongs of the Appellate Division's six-prong holding.  On prong one, we agree that trial judges must decide whether to permit third-party attendance and/or recording of a DME on a case-by-case basis, without "absolute prohibitions or entitlements."  Id. at 129.

On prong three, we concur that trial courts should consider both audio and video recording, as the value of both in resolving a dispute as to what occurred during a DME "could be significant."  Id. at 130.  We likewise concur that smart phones can unobtrusively be used to record a DME with "minimal effort."  Ibid.  Especially in the age of virtual meetings, both audio and video recording seem easy to accomplish and not unduly disruptive.

As to prong four, we agree with the prescription that "the parties shall cooperate to enter into a protective order" when a defense medical examiner is concerned that third-party observation, or an audio or video recording, could lead to the dissemination of proprietary information about the exam.  Id. at

24

131. We likewise agree with the Appellate Division that a protective order is appropriate to ensure that information about a DME "is solely used for the purposes of the case and not otherwise divulged." Ibid.

With regard to prongs five and six, we concur that reasonable conditions should be imposed on third-party observers to ensure they do not interfere with exams and that, where needed, a neutral foreign- or sign-language interpreter shall be agreed on by the parties or, failing agreement, selected by the court.

B.

We depart from the Appellate Division's decision only on prong two, the appellate court's holding that "despite contrary language in Carley . . . going forward, it shall be the plaintiff's burden to justify to the court that third-party presence or recording, or both, is appropriate for a DME." Id. at 130. We conclude that placing the burden on defendants to show why a neutral third-party observer or an unobtrusive recording should not be permitted in a particular case best comports with the realities of DMEs and the text of Rules 4:19 and 4:10-3. It also ensures fairness in our civil justice system.

A DME is a compelled medical examination. It is very different from a plaintiff's examination by her own treating physician or any doctor of her choosing. Whereas a plaintiff can choose to see a new doctor if she is uncomfortable with her treating physician or with a doctor suggested by her

25

attorney, a DME can involve a plaintiff being physically touched without her consent, or asked extraordinarily personal questions about her mental health without her consent.

A DME is also unique in our adversarial system. It is the only instance in which a defense expert may conduct discovery on a plaintiff without plaintiff's counsel present. And especially for plaintiffs with alleged cognitive limitations, psychological impairments, or language barriers, a DME reflects a profound power imbalance between the plaintiff and a medical professional with long experience in the examination of patients and participation in court proceedings. Just as "[a]t trial, if there is a dispute as to what happened in the examinations, the likelihood of a seven-year-old's testimony adequately countering the testimony of an expert witness[] . . . , who has testified hundreds of times, may be low," Wellmann, 458 N.J. Super. at 381, the same is often true for plaintiffs with cognitive disabilities or language barriers, and for many other plaintiffs.

While defendants are correct that plaintiffs put their mental or physical condition in controversy by filing a lawsuit, their contention that a DME is "no more 'adversarial' than a plaintiff's medical exam" by the plaintiff's own treating physician is incorrect. As the Kentucky Supreme Court has noted, "[t]he examining party, almost by definition, moves for a [DME] with the hope

26

of furthering its litigation position. Thus, the examining physician will nearly always be hired with an adversarial mind-set." Metro. Prop. & Cas. Ins. Co. v. Overstreet, 103 S.W.3d 31, 38 (Ky. 2003) (footnote omitted). Even if the Appellate Division was correct that a DME is not "inevitably designed to disprove claims of injury and trap plaintiffs into admitting or showing their claims are exaggerated or fabricated," DiFiore, 472 N.J. Super. at 121, the examination is inherently adversarial.

According to the Appellate Division, altering the burden of proof was justified by the 2000 amendments to Rule 4:19 and the rules adopted by other states and by the Federal Rules of Civil Procedure. We disagree.

The 2000 amendment to Rule 4:19 made several significant changes. As relevant here, the amended Rule allows defendants to require plaintiffs to attend a DME without obtaining a court order based on a showing of good cause. In the ordinary course, plaintiffs thus must submit to DMEs without any court review, and without a defendant making any demonstration of good cause for their attendance.

However, whereas the pre-2000 Rule 4:19 stated that the court's order "shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made," the amended Rule 4:19 allows defendants only to serve a notice "stating with specificity

27

when, where, and by whom the examination will be conducted and advising, to the extent practicable, as to the nature of the examination and any proposed tests." (emphases added). Rather than maintaining the original language, under which a defendant would have been able to prescribe the "manner, conditions, and scope of the examination," the amended Rule instead permits a defendant to dictate only "when, where, and by whom" the examination will be conducted. (emphases added). The change to Rule 4:19 thus does not support placing a burden on the plaintiff to justify third-party observation or recording of a DME.

Defendants assert that Rule 4:19 requires plaintiffs to move for a protective order if they oppose the conditions that a defendant has imposed on a DME, including as to third-party observation or recording. But the text of Rule 4:19 does not support that reading. Instead, the Rule provides that a defendant may notice only "when, where, and by whom" the examination will be conducted, and that plaintiffs must move for a protective order if they refuse to submit to the Rule 4:19 examination. R. 4:19 (emphasis added); see also Il Grande, 366 N.J. Super. 597 (detailing the burden shifting framework that applies if a plaintiff who refuses to undergo a noticed Rule 4:19 DME moves for a protective order under Rule 4:10-3).

28

Rule 4:10-3 also does not require a plaintiff to move for a protective order to bring a neutral third-party observer or a recording device to a DME. While Fed. R. Civ. P. 26 requires a "party or any person from whom discovery is sought" to move for a protective order to "designat[e] the persons who may be present while the discovery is conducted," Fed. R. Civ. P. 26(c)(1)(E) (emphasis added), our Rule 4:10-3 has no similar provision. Instead, it provides that "[o]n motion by a party or by the person from whom discovery is sought," the court may order "(a) That the discovery not be had;" or "(e) That discovery be conducted with no one present except persons designated by the court." R. 4:10-3 (emphasis added). Subsection (a) can be read to refer to a motion by a plaintiff who refuses to submit to a DME, whereas subsection (e) can be read to reference a motion by a defendant to preclude third-party observation at a DME. None of the provisions of Rule 4:10-3 seem to apply to a plaintiff who seeks to bring a third-party observer to a DME.

We find that the analyses adopted by other states and by the Federal Rules of Civil Procedure likewise do not support placing the burden on the plaintiff to show special circumstances to justify a neutral third-party observer or recording in each particular case. As the Appellate Division correctly noted, "[t]he majority rule adopted by the federal courts is that the court may, and often should, exclude third-party observers, including counsel, from

medical or psychiatric evaluations." Flack v. Nutribullet, L.L.C., 333 F.R.D. 508, 517 (C.D. Cal. 2019) (quoting Smolko v. Unimark Lowboy Transp., LLC, 327 F.R.D. 59, 61 (M.D. Pa. 2018)); see DiFiore, 472 N.J. Super. at 128. However, that is based in part on the text of Fed. R. Civ. P. 35(a)(2)(B) -- which, like the pre-amendment version of Rule 4:19, requires the court's order to "specify the time, place, manner, conditions, and scope of the examination" -- and Fed. R. Civ. P. 26(c) -- which, as earlier noted, requires a "party or any person from whom discovery is sought" to move for a protective order to "designat[e] the persons who may be present while the discovery is conducted." (emphases added). Our current Rules 4:19 and 4:10-3 are markedly different from the federal rules.

In contrast to the federal courts, the court rules of many states explicitly allow for third-party attendance or recording of DMEs. See, e.g., William Scott Wyatt & Richard A. Bales, The Presence of Third Parties at Rule 35 Examinations, 71 Temple L. Rev. 103, 123 (1998) ("The procedural rules or judicial decisions of many states expressly or impliedly allow third parties to be present at the examination."); Pa. R. Civ. P. 4010(a)(4)(i) ("The person to be examined shall have the right to have counsel or other representative present during the examination."); Ariz. R. Civ. P. 35(c) (both third-party attendance and recording are permitted, so long as neither will "adversely

affect the examination's outcome"); Cal. Code Civ. P. § 2032.510 (the examinee's attorney or a representative for the attorney may attend and record the exam, "but shall not participate in or disrupt it"); Fla. R. Civ. P. 1.360(a)(1)(A) (setting forth detailed requirements for when "the examination is to be recorded or observed by others"); Idaho R. Civ. P. 35(a)(3) ("Upon reasonable notice, the party being examined . . . must have the right to have a representative of his or her choice present for the examination."); 735 Ill. Comp. Stat. Ann. 5/2-1003(d) ("[T]he plaintiff has the right to have his or her attorney, or such other person as the plaintiff may wish, present at [a demanded] physical or mental examination."); Okla. Stat. tit. 12, § 3235(D) ("A representative of the person to be examined may be present at the examination."); Wash. CR 35(a)(2) ("The party being examined may have a representative present at the examination, who may observe but not interfere with or obstruct the examination."); Utah R. Civ. P. 35(a) (allowing audio or video recording of an examination "unless the party requesting the examination shows that the recording would unduly interfere with the examination").

Even where court rules do not unambiguously permit third-party observation or recording at DMEs, the courts of many of our sister states have interpreted them to so authorize, in part because a DME is adversarial. See,

31

e.g., Jakubowski v. Lengen, 450 N.Y.S.2d 612, 613-14 (App. Div. 1982) (holding that a plaintiff is entitled to have an attorney present during a DME); Langfeldt-Haaland v. Saupe Enters., Inc., 768 P.2d 1144, 1146-47 (Alaska 1989) (plaintiff's counsel is allowed to attend and record a DME "as a matter of course" because a DME is "part of the litigation process"); Jacob v. Chaplin, 639 N.E.2d 1010, 1013 (Ind. 1994) (recording of a DME does not impede an examiner's ability to conduct a fair examination); Thorpe v. Poore, 83 Va. Cir. 453, 453-54 (2011) (because a DME is part of the adversarial process, a plaintiff is entitled to video record a DME).

We therefore hold that if a plaintiff seeks to bring a neutral third-party observer to a Rule 4:19 exam, or to audio or video record the exam, plaintiff's counsel should notify defendant. If defense counsel opposes the third-party observation or recording, the parties should meet and confer in an effort to reach agreement. Failing an agreement, defendant can move for a protective order under Rule 4:10-3 to bar the observation or recording.

The trial court must then decide what to permit or forbid with no absolute prohibitions or entitlements. In undertaking a case-by-case analysis, trial courts must balance both the need for an accurate record and the imbalance of power between a medical professional and a patient against any valid concerns regarding the expert's ability to conduct an accurate assessment

32

of the patient's condition with a recording or a neutral third-party observer. The plaintiff's age, ability to communicate, cognitive limitations, psychological impairments, inexperience with the legal system, and language barriers are all relevant to this determination; other factors may be as well.

The degree of possible negative impact on an examination must also be assessed. It is difficult to imagine, for example, how a third party who silently observes a dental examination could negatively impact the exam. As discussed below, a neuropsychological examination may raise different concerns. Whether the examination will already be attended by anyone other than the doctor and plaintiff is also relevant. For example, for a person with limited English proficiency who will already be accompanied by an interpreter, despite the trial court's holding regarding Remache-Robalino, it is not immediately obvious how an unobtrusive recording device would call the validity of the examination into question in a way that the interpreter would not.

Pertinent too is the type of observer. A licensed nurse silently taking notes is different in kind from an attorney interjecting on behalf of their client. We agree with the Stoughton court that "[t]here is no need to turn the examining room into a court room." 281 N.J. Super. at 611. We therefore emphasize that our holding applies only to neutral third-party observers, not

attorneys.[2] Similarly, our holding is limited to third-party <u>observers</u>, not third parties who seek to interfere with or disrupt the exam. A person who sits silently and unobtrusively takes notes is a far cry from a third party who seeks to control, or participate in, the exam herself.

Given our constitutional authority over the practices and procedures of New Jersey courts pursuant to Article VI, Section 2, Paragraph 3 of the New Jersey Constitution, we also refer to the Civil Practice Committee whether <u>Rule</u> 4:19 or <u>Rule</u> 4:10-3 should be amended to reflect our holding in this case.

C.

We respond only briefly to the defendants' and Attorney General's prediction that in light of the 2016 ABN Policy Statement and the Board's position in this litigation, neuropsychologists will refuse to perform evaluations if ordered by a court to permit a neutral third-party observer or recording. In our view, that concern is unwarranted.

As an initial matter, we note that Dr. Benoff, one of the neuropsychologists in this case, did not oppose the presence of a neutral third-

---

[2] In their briefing before this Court, plaintiffs for the first time suggested that "the right to legal representation during a DME may indeed arise from New Jersey's constitution and Statutes." We do not ordinarily address legal claims raised for the first time before our Court, <u>see, e.g.</u>, <u>State v. Tate</u>, 220 N.J. 393, 412 (2015), and we decline to do so here.

34

party observer or a recording at DiFiore's DME. Instead, he certified that "he would be 'prevented' from 'fairly and accurately assessing'" DiFiore if her medical proxy was "permitted to answer[] questions on [her] behalf." DiFiore, 472 N.J. Super. at 114-15 (emphasis added). Our holding would allow no such thing.

The 2016 ABN Policy Statement likewise does not prohibit neuropsychologists from abiding by court orders to allow neutral third-party observation or recording. Instead, it discusses various "General Principles," including "Integrity" and "Justice," and "Ethical Standards" including "Competence" and "Assessment." Lewandowski, 23 Applied Neuropsych. at 391-94. Under "Ethical Standard 2: Competence," the Policy Statement notes that neuropsychological testing must be conducted in an environment that is free from interference or distraction, which generally means only the examiner and examinee present in the room. Id. at 393. And under "Ethical Standard 9: Assessment," the Policy Statement notes that "[t]he psychologist cannot provide opinions or evaluative statements" when a third-party observer is present, because "TPO presence yields [an] evaluation of questionable validity." Ibid. However, the Policy Statement also recognizes that the presence of an "unbiased, impartial, and neutral third-party observer may be necessary to proceed with or complete a neuropsychological assessment" for

35

certain children, elderly adults, or others with specific disabilities.  Id. at 395-96.  When such a third party is present, the "examiner is ethically required to document . . . any deviations of standardization or modifications in test administration" and to note any "limitations of . . . findings."  Id. at 396.  While the Policy Statement concludes that "altering test procedures to accommodate observation or recording compromises test standardization and affects the subsequent data set obtained," it also acknowledges that neutral third-party observers may be necessary in certain situations, including because of a court order.  Id. at 395-96.

We leave to the competent hands of the trial courts how to address the Policy Statement if a particular neuropsychologist raises it in a particular case. We note, however, that with all due respect to professional associations, they do not set court rules of this state.  As the Appellate Division correctly held, "the expert assigned to conduct the Rule 4:19 examination 'does not have the right to dictate the terms under which the examination shall be held.'" DiFiore, 472 N.J. Super. at 130 (quoting Carley, 307 N.J. Super. at 262).

Neither does the State Board of Psychological Examiners.  The Attorney General asserts that although the Board never codified the ABN Policy Statement into regulation, it could still discipline a psychologist for deviating from professional standards, including those set forth in the Policy Statement.

36

A threat of discipline or sanction could then "limit the pool of evaluators" available to a court. The Attorney General maintains that even if the neuropsychologist was complying with a court order, "the order alone would not necessarily insulate the psychologist from Board scrutiny" or discipline. However, the Attorney General conceded that no such scrutiny or discipline has ever been imposed or even contemplated. If the Board ever attempted to sanction a psychologist for following a court order and allowing a neutral third-party observer or recording, we could address any challenge that arose.

D.

Finally, we note that the question presented in this case involves only defense medical examinations, which are conducted solely for purposes of litigation, not treatment. Defendants never argued that recording or third-party observation should be available at examinations conducted by plaintiffs' treating physicians. So too, in their briefing below and to this court, they did not explicitly request or demand the ability to record or observe examinations by non-treating physicians arranged by plaintiffs' counsel solely for the purposes of litigation. While there was significant discussion of that possibility at oral argument, it is beyond the grant of certification in this case. We generally do not reach issues that the parties did not brief and decline to do so here. See, e.g., Gormley v. Wood-El, 218 N.J. 72, 95 n.8 (2014). We

therefore refer to the Civil Practice Committee whether there should be any provision to allow defendants to record or observe examinations by non-treating doctors arranged by plaintiffs' counsel solely for the purposes of litigation.

## V.

The judgment of the Appellate Division is affirmed as modified, and the matters are remanded to the trial courts for further proceedings consistent with this opinion.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUSTICE WAINER APTER's opinion. JUSTICE FASCIALE and JUDGE SABATINO (temporarily assigned) did not participate.